PEREZ v. FERNANDEZ.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF PORTO RICO.

No. 1. Argued April 29, 1904.—Decided April 23, 1906.

The policy of the United States, evidenced in its legislation concerning the
islands ceded by Spain, has been to secure to the people thereof a con-
tinuation of the laws and methods of practice and administration familiar
to them, which are to be controlling until changed by law, and it was the
intention of Congress in sec. 34 of the Foraker act of April 12, 1900, to
require the United States District Court for Porto Rico, in exercising
the jurisdiction of a Circuit Court in analogy to the powers of those
courts in the United States, to adapt itself, in cases other than of equity
and admiralty, to the local procedure and practice of Porto Rico. And
so held in regard to administering the remedy of attachment.

The Porto Rican system in force when the Foraker act was passed, and
binding until changed or amended, provided a statutory method for
recovery of damages by reason of an attachment wrongfully issued and
vacated, by the assessment thereof and judgment therefor in the attach-
ment suit itself, which method was exclusive and precluded the recovery
of such damages by separate suit at common law; and the District Court
of Porto Rico has no jurisdiction of such an action. In such a case it
could proceed in accordance with the local law, as nothing in the general
law of the United States or provisions as to jury trials in civil causes in
Circuit Courts of the United States is inconsistent with the enforce-
ment by the District Court of the United States of Porto Rico of special
statutory proceedings in assessing damages in attachment proceedings.

Where the jurisdiction of the court from which the record comes fails, the
objection can be raised in this court, if not by the parties, then by the
court itself.

An action at law was begun November 18, 1901, in the United
States District Court for the District of Porto Rico by the de-
fendant in error, José Perez y Fernandez, against José Antonio
Fernandez y Perez, to recover in an action for "tresspass upon
the case for wrongful attachment." The declaration contained
the usual averments of a declaration in a common law action
and averred that the attachment had been issued maliciously

and without probable cause, and levied upon a certain two-story house then belonging to the defendant in error, in Mayaguez, Porto Rico. One Rafael Diaz Aguerria was made co-defendant, and it was averred that the attachment was issued in a suit brought by Fernandez as attorney in fact and agent of Aguerria, who authorized and ratified the acts complained of. It appeared that the defendant in error Perez had owed about 6,000 pesos to one Claudio Barro, who died, leaving a will in which Rafael Diaz Aguerria was named as executor. The will was probated in Spain, and Aguerria qualified there as executor of the estate. Perez, on November 10, 1899, recorded a mortgage in favor of one Don Victor Ochoa y Perez for 20,000 pesos. The suit in which the attachment was issued was begun January 2, 1900, by the filing of a declaration to recover on certain notes, and was brought in the name of Aguerria as executor of the last will and testament of Claudio Barro. The action was begun in the military court established by the authority of the United States after the cession of Porto Rico, called the United States Provisional Court for the Department of Porto Rico, which court was succeeded by the United States District Court. On the date of the beginning of the suit an affidavit for attachment was filed, which was sworn to by Fernandez, plaintiff in error, purporting to have the power of attorney of Rafael Diaz Aguerria, executor of the last will and testament of Claudio Barro, the ground alleged being that the affiant had reason to believe that the defendant intended to and would fraudulently part with or conceal his property before judgment could be recovered against him, so that the judgment could not be satisfied out of the property. The summons was issued, and a writ of attachment was levied upon the premises of the defendant in error, and notice posted thereon. Further proceedings were arrested by an injunction proceeding in the United States court, brought by Jacinto Perez Barro, heir of Claudio Barro, deceased, upon the ground that Aguerria, plaintiff in the attachment proceeding, suing as executor of the will probated in Spain, had not taken out ancillary letters in

Porto Rico. The action for malicious attachment was joint in form and the summons was returned as to Aguerria that the marshal was unable to find him within his district. The declaration averred that he was a resident of Porto Rico, but he was never served with summons in this case. Fernandez demurred to the declaration, averring that it appeared on its face that he was acting as the duly authorized agent of Aguerria, and was neither principal nor party plaintiff to the action against Perez, the defendant in error. This demurrer was overruled, and no exception taken to such action by Fernandez. Afterwards the general issue was filed, the case was tried to a jury without objection and upon a charge of the court, substantially leaving to the jury the question whether Fernandez had caused the attachment to issue and be levied maliciously and without probable cause, to the injury of the standing and credit of the defendant in error as a merchant. A verdict was returned in favor of the defendant in error for the sum of $7,000, upon which a motion for a new trial was overruled and judgment entered.

*Mr. James S. Harlan,* with whom *Mr. John Maynard Harlan* was on the brief, for plaintiff in error:

The lower court in the consideration of the case assumed jurisdiction on the theory that the pleadings presented a right at common law which it could properly proceed to try according to the common law. No such right existed under the local law apart from and independently of the original attachment proceeding, and the right to enforce such a demand existed only as an incident to and as a part of the original action in attachment, that remedy being exclusive of all other remedies.

It follows that the lower court assumed jurisdiction in this case of a cause of action that was not authorized by the local system of laws and that could not have been enforced in the local courts. It therefore had no legal existence, and could not be enforced in the United States District Court for the District of Porto Rico, for the jurisdiction of that court is concur-

rent with that of the local courts. Aside from its special jurisdiction in equity and admiralty, and in controversies involving Federal questions, it could not take cognizance of any right or claim that was not cognizable under the local law in the local courts or enforce any remedy not enforceable by the local courts.

If, therefore, the lack of jurisdiction was complete, it is clear that this court may now consider the question of jurisdiction and should reverse the judgment of the court below upon the ground that that court assumed jurisdiction where none existed and granted a remedy without legal warrant. *Campbell* v. *Porter,* 162 U. S. 478; *Nigh* v. *Dovel,* 84 Ill. App. 228; *Thompson* v. *Railroad Companies,* 6 Wall. 134; *Allen* v. *Pullman Co.,* 139 U. S. 658; *Parker* v. *Ormsby,* 141 U. S. 81; *Mansfield &c. Ry.* v. *Swan,* 111 U. S. 379; *United States* v. *Huckabee,* 16 Wall. 414; *Fiester* v. *Shepard,* 92 N. Y. 251; *Fowler* v. *Eddy,* 110 Pa. St. 117; *Fairfax Mfg. Co.* v. *Chambers,* 75 Maryland, 604; *Forsyth* v. *Hammond,* 142 Indiana, 505. Independent civil actions based on torts are practically unknown in the civil law. The criminal laws usually provide money compensation for the injured party as well as punishment for the guilty one. Sanchez, Roman Civil Law of Spain, vol. 4, p. 1017; Falcon, Civil Code, p. 429; Penal Code Porto Rico, arts. 16, 613, 627. See article by Judge Lobinger, Review of Reviews, September, 1905.

The damages awarded in this action of trespass on the case could have been assessed in the original attachment proceeding.

The Spanish law in relation to provisional seizures or attachments is found in title XIV of the Code of Civil Procedure.

But, unlike attachment proceedings as commonly established by legislation in the United States, the Spanish law, in force in Porto Rico at the time involved in this record, provides, in case the attachment is vacated for any cause, for an adjudication, in the action itself, of the claim of the defendant for damages arising out of the wrongful attachment. Title XIV of

the Code of Civil Procedure contains complete provisions for such an adjudication. Articles 1409–1415. Before this judgment could be executed it would be necessary to resort to the procedure established in articles 927 et seq., under which by proper statements or pleadings and counter pleadings an issue is arrived at and set for hearing, witnesses are called, evidence introduced, and the court after due consideration of the record finds whether any damage has been suffered and, if so, to what amount. This finding becomes a part of the final judgment in the attachment suit.

The procedure bears a strong analogy to a suit in equity with a reference to a master to determine and liquidate the amount to be paid. This having been determined, a final decree is then entered embracing the amount so arrived at.

Such a preliminary finding on the law and the facts by a court in chancery is not, generally speaking, a final order and cannot be appealed from; it only becomes final when the master or the court has taken the necessary testimony to ascertain the amount due and has embodied it in the final decree. So there are repeated decisions by the Supreme Court at Madrid in which it is held that the preliminary order vacating the attachment and ordering the plaintiff to pay the costs and to indemnify the defendant for his losses and damages, is not final, and cannot be appealed from until the amount of the losses and damages has been ascertained in accordance with the procedure established in articles 927 et seq. of the Code of Civil Procedure. Decision of December 4, 1901, 92 Jurisp. Civil, 550; Decision of October 20, 1899, 88 Jurisp. Civil, 130; Decision of December 3, 1892, 72 Jurisp. Civil, 494; Decision of November 6, 1888, 64 Jurisp. Civil, 538; Decision of April 24, 1863, 8 Jurisp. Civil, 267.

The mode provided in title XIV for ascertaining losses and damages in the attachment proceeding itself was exclusive under the law then in force of every other mode. Navarro, Comentarios á la Ley de Enjuiciamiento Civil, pp. 411, 412. No

decision and no authority under the civil law of Spain can be found authorizing an independent proceeding.

The question of the constitutional right of trial by jury is not involved. The Federal court has 'no jurisdiction to grant an attachment except in accordance with local law. Waples on Attachment, p. 325; *Bates* v. *Days*, 17 Fed. Rep. 167.

The United States District Court for the District of Porto Rico, so far as the local laws are concerned, occupies exactly the position of a Circuit Court of the United States sitting in a State. It is therefore just as much bound as is a Circuit Court of the United States to the observance, with respect to the local laws of the island, of section 721 of the Revised Statutes; and to the observance of section 914, which requires Federal courts to conform "as near as may be" to the practice, pleadings, forms, of the courts of record of the State in which they sit. *Nudd* v. *Burrows*, 91 U. S. 426, where the reasons for the provision are set forth. See also *Indianapolis &c. R. R. Co.* v. *Horst*, 93 U. S. 291; *Lewis* v. *Gould*, 13 Blatch. 216; *Sears* v. *Eastburn*, 10 How. 187; *B. & O. R. R. Co.* v. *Hamilton*, 16 Fed. Rep. 181.

Even the tribal laws and customs of our American Indians have been accorded the dignity of being respected by the Federal courts. *Mackey* v. *Coxe*, 18 How. 100; *Davison* v. *Gibson*, 56 Fed. Rep. 443.

The record shows a fundamental error has been committed. The proposition is that the court had no such jurisdiction as it exercised, that it could grant no such remedy and that the whole proceeding was erroneous from its inception to its conclusion and this court may examine the laws of Porto Rico and determine whether the trial court had jurisdiction. *Harvey* v. *Commonwealth*, 20 Fed. Rep. 411.

*Mr. Frederic D. McKenney,* with whom *Mr. Francis H. Dexter, Mr. Wayne MacVeagh* and *Mr. John Spalding Flannery* were on the brief, for defendant in error:

No objection to the jurisdiction of the trial court nor any

objection whatever to the charge of the court to the jury was interposed by either party. Unless want of jurisdiction in the trial court by reason of the subject matter of the controversy appears from the face of the record, the judgment under review must be sustained. *Hunt* v. *Hunt,* 72 N. Y. 225.

The question thus presented is one of power in the trial court to act judicially upon the subject matter in suit, and it may be conceded that this court can properly consider and determine the contention of plaintiff in error that a civil action like the present one was at the date of the attachment and the commencement of this action unknown to and unauthorized by the laws and jurisprudence of Porto Rico. *United States* v. *Perot,* 98 U. S. 428; *United States* v. *Chaves,* 159 U. S. 459.

Civil actions for the recovery of damages for injuries to persons and property caused by the fault or negligence of another have been recognized both by the Roman and by the civil law from early times. Such actions have been administered in the peninsula since the establishment of the Spanish monarchy, and have always occupied an important place in the jurisprudence of that nation. Such actions were countenanced in the Law of the Twelve Tables and in the Justinian Codes, upon which the Spanish system of laws was largely founded.

The body of laws called "Las Siete Partidas" were in force in Porto Rico until 1889, when by royal decree the Civil Code since in force was extended to that province. The Code of Civil Procedure, likewise so extended, became effective in said province January 1, 1886.

Law I of Las Siete Partidas (tit. XV, part 7) declares that damage is the loss of or detriment to one's property or person caused by the fault of another. Law III declares that damages may be recovered from the tort feasor or from the one whose fault caused the damage; also from the person who ordered or advised the commission thereof.

The Civil Code, which supersedes the Partidas, though preserving the general features of the former legislation, gives much evidence of having been influenced both in its form and

principles by the Code Napoleon. For example, article 1902 of the Civil Code, which directly pertains to this discussion, reads: "He who, by an act or omission, causes damage to another, fault (*culpa*) or negligence intervening, shall be obliged to repair the damage so done," while the corresponding articles of the Code Napoleon read as follows: "Art. 1382. Every act whatever of man which causes damage to another obligates him by whose fault it has happened to make reparation.

"Art. 1383. Every person is responsible for the damage which he causes not only by his act, but also by his negligence or by his imprudence."

Similar provisions are also to be found in the Civil Codes of Belgium, articles 1382 and 1383; Netherlands, articles 1401 and 1402; Austria, article 1295; Switzerland, canton of Vand, articles 1037 and 1038; Chile, article 2314; Guatemala, articles 2276 and 2277; Uruguay, article 1280; Argentina, article 1109.

Wherever the civil law system prevails practically identical provisions will be found, for all civil law codes find a common origin in the Law of the Twelve Tables and the Justinian Codes.

Upon the articles above mentioned many commentators have shed light both as to their scope and meaning. See Don Leon Bonel y Sanchez, Codigo Civil Español, vol. IV, p. 894 *et seq.* Toullier, Le Droit Civil Français, vol. 6, p. 94.

The administration of the civil law in Spain and her dependencies in regard to actions for torts, did not at the time of the institution of this suit greatly differ from that administered in other civil law countries, and apart from methods of procedure did not greatly differ from that in vogue in common law countries.

In the administration of civil law generally there is a well-recognized distinction between the word "délit" (a wrong) when used in connection with civil and as used in criminal complaints. Aubry and Rau, under the title "Des Délits," Cours de Droit Civil Français, vol. 4, § § 443, 445. See also Laurent, Cours Elémentaire de Droit Civil, vol. 3, p. 207. See

also Decision of March 23, 1882, vol. 48, Jurisp. Civil, p. 394; Decision of June 14, 1886, vol. 60, Jurisp. Civil, p. 120; Deccionario &c., Alcubella, vol. 1, p. 122.

Admitting that the Spanish law in force in Porto Rico at the time of the levying of the attachment made ample provision in cases of wrongful attachment for the assessment of damages in the attachment proceedings itself, articles 1409–1415 of the Code of Civil Procedure, and that in case of dispute as to the fact of damages or the amount thereof, specifically provided for the method of their ascertainment by articles 927 *et seq.* of the same Code, it is submitted that these articles of the Code of Civil Procedure have no bearing upon the present case for two reasons: 1. Because the plaintiff in error, Fernandez, was not a party plaintiff in the attachment proceeding. 2. Because the United States Provisional Court for Porto Rico, in which the attachment proceedings were had, was without judicial power or authority to adjudicate in conformity with the provisions of the Spanish Code of Civil Procedure, damages against Fernandez.

The United States Provisional Court for Porto Rico was established by General Orders, No. 88. By article II the judiciary power of said Provisional Court was extended "to all cases which would be properly cognizable by the Circuit or District Courts of the United States under the Constitution, and to all common law offenses within the restrictions hereinafter specified." Article IV thereof is as follows: "The decisions of said court shall follow the principles of common law and equity as established by the courts of the United States, and its procedure, rules and records shall conform as nearly as practicable to those reserved and kept in said Federal courts."

Article V declares that "the jury may be introduced or dispensed with in any particular case, in the discretion of the court;" and article VI declares that "the judges of the Provisional Court shall be clothed with the powers vested in the judges of the Circuit or District Courts of the United States." Both Aguerria and Fernandez were subjects of Spain—the for-

mer a citizen of Spain, the latter seemingly a resident of Porto Rico. Whatever might have been the regular procedure, so far as the recovery of damages is concerned, had Fernandez, acting for his principal, Aguerria, resorted to the proper insular court in connection with the attachment proceedings against Perez, and however Perez might then have been bound by the forms and methods of procedure provided by the articles of the Code above quoted governing the assessment of costs and damages, it is certain that the methods of procedure so provided neither helped nor hindered the parties to the action in the Provisional Court, for in the very authority which established that court it was expressly declared that "its procedure, rules, and records shall conform as nearly as practicable to those observed and kept in said Federal courts."

It is certain that there is no procedure known to the Circuit and District Courts of the United States by which Federal judges sitting therein are required or authorized to determine and assess damages alleged to have been suffered by reason of the wrongful suing out of an attachment, for an attachment proceeding is not a case of equity nor of admiralty nor maritime jurisdiction, and section 648 of the Revised Statutes of the United States, which but restates a provision of the Judiciary Act of 1789, provides that the trial of issues of fact in the Circuit Courts shall be by jury except in cases of equity and of admiralty and maritime jurisdiction, and except as otherwise provided in proceedings in bankruptcy, and except the parties or their attorneys of record waive a jury. Section 649.

By the act of April 12, 1900, the Provisional Court above referred to was abolished, and the District Court of the United States for the District of Porto Rico was declared to be its successor and authorized to take jurisdiction of all cases and proceedings pending therein. Section VIII of said act provides that the laws and ordinances of Porto Rico in force shall continue except as "altered or modified by military orders and decrees in force when this act shall take effect and so far as

the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable."

The local law and practice cannot be recognized as a rule of procedure in the courts of the United States where its adoption would be repugnant to the Federal Constitution or impair the effect of any Federal legislation. *Virginia Coupon Cases,* 114 U. S. 303; *Luxton* v. *North River Bridge Co.,* 147 U. S. 338.

Whenever Congress has legislated upon any matter of practice, and prescribed a rule for the government of its own courts, it is to that extent exclusive of the state legislation on the same subject. *Southern Pac. Co.* v. *Denton,* 146 U. S. 209. See also *Shepard* v. *Adams,* 168 U. S. 625.

If it be true that the Porto Rican procedure required a defendant in attachment proceedings to demand the liquidation of his damages by the trial judge in that action on pain of losing all right to indemnification, it is nevertheless true that section 914, Revised Statutes of the United States, does not require any such procedure to be followed in the Federal court for Porto Rico, for to do so would be to deny the right of trial by jury except in certain cases.

The Law of Civil Procedure as adopted for Porto Rico in 1885, §§ 939, 940, corresponds with the Law of Civil Procedure of Spain and with §§ 1409 and 1413 in force in Porto Rico at the time of the attachment. Construing these laws Navarro in his Commentaries states that the person concerned shall "institute the ordinary suit" (p. 253). See also Decisions of November 26, 1857 and April 7, 1868; Derecho Procesal de España, Pozo, vol. 2, p. 188; Decision of July 6, 1885, 58 Jurisp. Civil, p. 265; Decision of July 21, 1893, 73 Jurisp. Civil, p. 954.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

This case was argued orally and upon briefs at the October term, 1903, of this court. After the case had been argued

and submitted, on December 5, 1904, an order was entered as follows:

"No. 6. *José Antonio Fernandez y Perez, Plaintiff in Error,* v. *José Perez y Fernandez.* Counsel are requested to submit additional briefs on these points:

"1. Can this court, on the record of this case, properly consider and determine the contention of the plaintiff in error that a civil action like the present one was, at the date of the attachment and the commencement of this action, unknown to and unauthorized by the laws and jurisprudence of Porto Rico?

"2. Was a civil action like the present one known to the laws and jurisprudence of Porto Rico at the time the attachment in question was sued out?

"3. Under the law of civil procedure as existing in Porto Rico at the time of the attachment proceeding complained of, could the damages herein claimed have been allowed or assessed in that proceeding upon the dissolution or discharge of the attachment? If so, was that mode exclusive of every other for ascertaining such damages?"

Our views in this case will be practically in answer to these questions.

The case affords a striking illustration of the difficulty of undertaking to establish a common law court and system of jurisprudence in a country hitherto governed by codes having their origin in the civil law, where the bar and the people know little of any other system of jurisprudence. The action in this case was begun and tried upon pleadings and under principles which are controlling in a State following the common law, having its origin in England, and the case was submitted to the jury upon general principles governing such actions for the recovery of damages for the seizure of property upon writs of attachment issued maliciously and without probable cause. The action proceeded in all respects in form and substance as it would had it been begun and prosecuted in a common law State.

Cases which have come to this court from the Philippines and Porto Rico, where we have had occasion to consider the

enactments making changes in the laws of those islands, show the disposition of the Executive and Congress not to interfere more than is necessary with local institutions, and to engraft upon the old and different system of jurisprudence established by the civil law only such changes as were deemed necessary in the interest of the people, and in order to more effectually conserve and protect their rights. *Kepner* v. *United States,* 195 U. S. 100, 122. This policy has been followed in dealing with the Porto Ricans. President's Message, December 5, 1899; Walton's Civil Law in Spain and Spanish America, 594. The new civil government was established by the act of April 12, 1900, commonly known as the Foraker Act. 31 Stat. 77. Section 8 of that act provides: "That the laws and ordinances of Porto Rico now in force shall continue in full force and effect, except as altered, amended, or modified hereinafter, or as altered or modified by military orders and decrees in force when this act shall take effect, and so far as the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions hereof, until altered, amended, or repealed by the legislative authority hereinafter provided for Porto Rico or by act of Congress of the United States. . . ."

The first inquiry then to which we shall direct attention concerns the law in force at the time of the passage of this act in Porto Rico, governing the issuing of attachments and the recovery of damages for wrongfully causing the same to issue and be levied. The additional briefs filed by counsel upon both sides in this case since the order of the court of December 5, 1904, above quoted, exhibit commendable zeal and industry in investigating this question and bringing to the attention of the court the Spanish treatises and cases throwing light upon the subject. Upon behalf of the defendant in error it is insisted that the action is governed by article 1902 of the Civil Code of Porto Rico, which provides: "Art. 1902. A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done."

War Department Translation of the Civil Code in force in Cuba, Porto Rico and the Philippines, 244. Much discussion is had in the briefs as to the meaning of this section, and whether the term "fault"—"culpa" in the Spanish jurisprudence—is broad enough to include actions brought to recover for conduct which is alleged as malicious, as distinguished from those where the basis of the recovery is a careless act or omission which does not have for its motive the intention to cause damage.

In the view we take of this case we do not find it necessary to consider the authorities cited, or the views pressed pro and con as to whether a malicious act, such as is complained of in this case, is within the terms of this article of the Code. The references to sections of the Code of Procedure show a comprehensive system specially provided for the issuing of attachments and the recovery of damages where the same were wrongfully procured to be allowed. The subject of attachment of property is treated in title XIV, Law of Civil Procedure, War Department translation, article 1395 *et seq.* Unlike ordinary American procedure, an attachment is issued by order of the judge and certain grounds are recognized. They are summarized as follows: "If the debtor be a foreigner, or if, being a citizen, he has no known domicil, or does not own real estate, or does not have any place of business at which the payment of the debt may be demanded. It may also be ordered, without any such attendant condition, if he has disappeared from his home or place of business, leaving no one in charge, or if he conceals himself, or if there be reasonable grounds for believing that he will conceal or undersell his property to the prejudice of creditors." Art. 1398. If it shall turn out that the attachment was wrongfully procured, ample provisions are made for the adjudication and recovery of damages in the action. See articles 1409–1415, which are set forth in the margin.[1]

---

[1] ART. 1409. A person who has requested and obtained a provisional seizure for an amount of more than 1,000 pesetas must request the ratification thereof in an executory action or in the declaratory action which may be

The theory of these sections of the Code is that when the court which issues the attachment is satisfied that the same has been wrongfully issued, it will proceed in the manner pointed out in the statute to ascertain the loss and damages

proper, filing the corresponding complaint within twenty days after the levying of the attachment. Upon the expiration of this period without the action having been instituted or a ratification of the seizure having been requested, the latter shall be null *de jure,* and shall be without effect at the instance of the defendant without the plaintiff being heard. A petition for a rehearing may be made against this ruling, and if it should not be granted, an appeal for a stay and review of the proceedings may be interposed.

Art. 1410. Notwithstanding the provisions of the foregoing article, if the debtor should be included in any of the cases of article 1398, the provisional seizure may also be ordered after the institution of the action, a separate record being made thereof. The provisions contained in articles 1399 to 1410, inclusive, shall be applicable to this case, and after the attachment has been levied the proceedings thereupon shall be continued as prescribed for incidental issues. When an attachment is vacated by a final ruling, because it is not included in any of the cases of said article 1398, the plaintiff shall be taxed all the costs and be adjudged to indemnify the defendant for any losses or damages he may have suffered, which shall be recovered in the manner prescribed in article 1415.

Art. 1411. When the provisional seizure becomes of no effect by reason of its having become null *de jure,* in accordance with Article 1409, the surety shall be ordered cancelled in the same ruling, if any should have been furnished, or what may be proper shall be ordered for vacating the attachment and cancelling the cautionary notice, in a proper case, and all costs shall be taxed against the plaintiff, who shall also be adjudged to indemnify the defendants for any losses and damages he may have incurred. If the attachment should be vacated for any other reason, the ruling thereupon shall also determine what may be proper according to the cases with regard to costs and the indemnification of losses and damages which may have been suffered.

Art. 1412. If the acknowledgment of a signature or of the written evidence of a debt should not be made or be delayed through the fault of the debtor, and if the filing of the complaint and the ratification of the attachment should depend thereupon, the time lost in obtaining said acknowledgment shall not be included in the period of time prescribed in article 1409.

Art. 1413. If the owner of the property seized should request it, the attachment creditor must file his complaint within the period of ten days, unless any of the circumstances mentioned in the foregoing article is attendant. Should he not do so, the attachment shall be vacated, and the costs, losses, and damages shall be taxed against him.

Art. 1414. After the provisional seizure has been levied the debtor may

which the defendant has suffered, and in the same action to
tax the costs against the plaintiff and to adjudge him to in-
demnify the defendant for such losses and damages. And
these losses and this recovery are adjudicated in the manner
pointed out in articles 927 *et seq.* of the Code of Civil Procedure.
These articles are found in title VIII of that Code, entitled
"Execution of Judgments." The defendant in the attachment
having been declared entitled to recover damages, proceedings
follow for the purpose of ascertaining the amount thereof.
Section 927 *et seq.* provide for the manner of making up an issue,
taking testimony and hearing witnesses, and, upon final order
or decree made by the court, an appeal can be prosecuted.
This full and comprehensive statutory method of ascertaining
and adjudging the damages to be recovered in cases where at-
tachments are wrongfully issued and vacated for any cause,
would seem to preclude the application of general provisions
of the Code giving a right of recovery for acts of fault or negli-
gence.

We are not cited to any decision of the Supreme Court of
Spain expressly adjudicating this matter, but are referred by
counsel on both sides to a treatise on the law of civil procedure,
"Commentarios á la Ley de Enjuiciamiento Civil," p. 412, by
Señor José Maria Manresa y Navarro, said to be a text-writer
of the highest authority in Spain. The English translation
of his text is given as follows: "We do not think that this
rule [relating to independent actions for damages under the
mortgage law] is applicable to attachments, because on the
motion to vacate an attachment no discussion or proof of the

---

object thereto and request that it be vacated, with indemnification of losses
and damages, if not included in any of the cases of article 1398. He may
make this petition within the five days following that of the notice of the
ruling ratifying the seizure, or before that time, if he should deem it proper,
and it shall be heard and determined in a separate record in accordance with
the procedure prescribed for incidental issues.

ART. 1415. In cases in which there is an adjudication of losses and dam-
ages, as soon as the ruling thereupon becomes final, they shall be recovered
according to the procedure established in Articles 927 *et seq.*

existence of losses and damages is allowed, and because the law itself provides, in addition to this, that, when by final order of the court, an attachment is vacated, the plaintiff be adjudged to pay the defendant his losses and damages, they being ascertained in the manner provided in article 1417,[1] that is, according to the procedure in article 928 et seq. Such a proceeding permits of a discussion, if the issue is made, not only of the amount but of the existence of losses and damages. It follows that the court can decide on both questions without the necessity of a new suit, which is precisely what the law has sought to avoid." This seems to be a direct authority for the proposition that this plan of recovery of damages for wrongful attachments is exclusive. In the absence of authority to the contrary, and in view of the plain provisions of the Code, we accept it as properly declaring the existing law upon the subject. We reach the conclusion that the Porto Rican system in force at the time of the passage of the Foraker Act, and binding until changed or amended, provided in the state of affairs shown by this record, a recovery for damages in the method pointed out in the attachment suit, by the special statutory method provided for, and not otherwise.

The difference between the liability of one wrongfully levying an attachment at common law and the assessments of costs and damages under these provisions of the Porto Rican Code is not one of form merely. The former action is substantially one for malicious prosecution, and can be maintained only upon proof of malice and want of probable cause. Under the Code remedies given in Porto Rico the court is required to assess damages, although malice or want of probable cause in suing out the attachment may not be expressly shown. The remedy given seems to cover all cases, where the attachment is vacated, irrespective of the motive in suing it out.

This brings us to briefly inquire as to the nature and extent of the jurisdiction and practice of the United States courts in Porto Rico. Section 34 of the Foraker Act established a

---

[1] Art. 1415, Porto Rican Code.

PE REZ *v.* FERNANDEZ. 97

United States District Court for Porto Rico and gave to it, in addition to the ordinary jurisdiction of a District Court of the United States, jurisdiction of all cases cognizant in the Circuit Courts of the United States, and provides that it shall proceed therein in the same manner as a Circuit Court, the intention of Congress obviously being to establish a United States court in Porto Rico, having like jurisdiction of both District and Circuit Courts of the United States in the States. Section 914 of the Revised Statutes of the United States provides: "The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the Circuit and District Courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such Circuit or District Courts are held, any rule of court to the contrary notwithstanding." The act of August 13, 1888, 25 Stat. 433, provides that the Circuit Courts of the United States shall have original jurisdiction concurrent with the courts of the several States in suits at common law and in equity. We think it was the intention of Congress in the Porto Rican act to require the District Court exercising the jurisdiction of a Circuit Court, in analogy to the powers of the Circuit Courts in the States, to adapt themselves, save in the excepted cases in equity and admiralty, to the local procedure and practice in Porto Rico. This conclusion is in accord with the policy of the United States, evidenced in its legislation concerning the islands ceded by Spain, and secures to the people thereof a continuation of the laws and methods of practice and administration familiar to them, which are to be controlling until changed by law.

In the Revised Statutes of the United States, section 915, it is provided as to attachments: "In common law causes in the Circuit and District Courts the plaintiff shall be entitled to similar remedies, by attachment or other process, against the property of the defendant, which are now provided by the laws of the State in which such court is held for the courts thereof;

and such Circuit or District Courts may from time to time, by general rules, adopt such state laws as may be in force in the States where they are held in relation to attachments and other process: *Provided,* That similar preliminary affidavits or proofs, and similar security, as required by such state laws, shall be first furnished by the party seeking such attachment or other remedy." By analogy it would seem that the District Court of Porto Rico, exercising the jurisdiction of a Circuit Court in its practice as to the issuing of attachments, is to adapt itself to the local practice recognized and established in Porto Rico. Circuit Courts of the United States are not governed by any separate attachment law, but are required to administer the remedy in attachment provided in the laws of the State in which the courts are held. *Bates et al.* v. *Days,* 17 Fed. Rep. 167.

It is further objected on the part of the defendant in error that Porto Rican procedure can have no application to this action against Fernandez, because he was not a party plaintiff to the attachment suit, and the statute provides that the costs of the attachment and damages shall be assessed against the plaintiff in the action. We do not perceive that this fact affects the determination of the question as to the proper remedy in such cases. There is nothing in this action to show that Fernandez was not authorized to bring the suit and take out the attachment in behalf of the plaintiff in that suit, in which event Aguerria would be liable for the acts of his agent in that behalf. Nor is there any reason why Fernandez might not be made a party to the attachment proceeding if damages were to be assessed against him alone.

It is further objected that the United States court has no method by which it can assess these damages in the manner required in the Porto Rican Code. In giving the remedies provided therein and assessing the damages we see no reason why that court cannot adapt itself to the requirements of the local code and administer the remedies therein provided. In *Traction Company* v. *Mining Company,* 196 U. S. 239, it was held

that the Federal court might follow the methods required by the Kentucky statute in administering the local law for the condemnation of property, so far as required to meet the needs of justice. In that case the local law required the appointment of appraisers by the court to assess compensation for the property taken. Speaking of the judicial power of a Circuit Court of the United States administered in such courts it was held: "In the exercise of that power a Circuit Court of the United States, sitting within the limits of a State and having jurisdiction of the parties, is, for every practical purpose, a court of that State. Its function, under such circumstances, is to enforce the rights of parties according to the law of the State, taking care, always, as the state courts must take care, not to infringe any right secured by the Constitution and the laws of the United States." In view of the provisions of the Foraker Act, continuing local laws in force, this reasoning has application to the powers of the United States court in that territory. There can be no difficulty in exercising the attachment remedies provided in the Porto Rican Code, if the attachment shall turn out to have been wrongfully issued, and making an assessment of damages in the manner provided in that Code. The procedure is simple and easily administered. Nor is there anything in that special procedure encroaching upon the right to a jury trial, secured by the Federal Constitution, in suits at common law where the value in controversy exceeds twenty dollars. If it be assumed—a point which it is not necessary to decide—that that part of the Constitution is applicable and in force in Porto Rico, the proceeding is not a suit at common law, but simply a method of ascertaining damages in a special proceeding in which property has been wrongfully seized.

Nor would the general provisions of the Revised Statutes, § 648, providing for a jury trial as to issues of fact in Circuit Courts, except in cases of admiralty and equity jurisdiction, prevent the enforcement of the express provisions of the Porto Rican Code as to assessment for damages for wrongful attachment.

Section 8 of the Foraker Act, as we have seen, continues in force the laws and ordinances of Porto Rico, except as modified by military orders and decrees in force, so far as the same are not inconsistent or in conflict with the statutory laws of the United States, which by section 14 of the act, when not locally inapplicable, with certain exceptions, are declared to be in force and effect in Porto Rico as in the United States. The general provisions as to jury trials in civil causes in Circuit Courts of the United States are not inconsistent with the enforcement of a special statutory proceeding as to the assessment of damages in attachment proceedings, as to which the United States has no special statutory procedure, and enforces in that respect the requirements of the local law.

If we are right in holding that the Porto Rican law and practice as to attachments and the recovery of damages in respect thereto are controlling in a Federal court in that territory, and a common law action for a wrongful and malicious attachment was unknown to the Porto Rican procedure, the court had no jurisdiction of the action. The record shows that practically no exception was taken in the record and proceedings in the trial court, but it is familiar law that this court will of its own motion inquire into the jurisdiction which it has and as well that of the court below, without any special exception being taken. If, as illustrated in the brief for counsel for the plaintiff in error, a Circuit Court of the United States should undertake to entertain a bankruptcy proceeding or an admiralty cause, its proceedings would be void for want of jurisdiction. So, in the present case, there being no such common law action enforceable under the Porto Rican procedure, a court of that district would have no jurisdiction to entertain the suit. Where the jurisdiction fails the objection can be raised in this court; if not by the parties, then by the court itself. *Parker* v. *Ormsby* 141 U. S. 81; *Mansfield &c. Railway Co.* v. *Swan*, 111 U. S. 379; *Thompson* v. *Railway Companies*, 6 Wall. 134.

We, therefore, reach the conclusion that the United States

District Court had no jurisdiction of this action, and consequently the proceedings had therein were null and void.

*Judgment reversed.*

MR. JUSTICE WHITE dissenting.

As it is conceded that the question upon which the judgment is now reversed was not saved in the court below, I am con-. strained to dissent. In my opinion the error, if any, was a mere question of mode of procedure, involving no want of jurisdiction *ratione materiæ*, even conceding that the presence of a question of such a character would authorize this court to reverse—in the absence of any exception in the court below— or any reference to the question in that court.

MR. JUSTICE McKENNA concurs in this dissent.