# JOSÉ CANUTO DIAZ

*v.*

# FAJARDO DEVELOPMENT CO.

---

San Juan, Law, No. 384.

1. A court trying a case without the intervention of a jury need not find in accordance with the uncontradicted testimony of the witnesses if that testimony is improbable, unreasonable, or by interested witnesses

Diaz v. Fajardo Development Co.

2. The employer must furnish appliances that are reasonably safe.

3. An employee assumes the ordinary risks of his employment, but not against defects of which he knew nothing.

4. One injured in trying to escape from a dangerous position can recover.

5. This court will adapt itself "in cases other than of equity and admiralty, to the local procedure and practice in Porto Rico."

6. Civil Code, §§ 1803 and 1804, do not apply to a case of an employee injured by the carelessness of a fellow servant.

7. The employers' liability act of March 1, 1902 (Porto Rico), was an exclusive remedy in cases covered by it.

8. Under the above act the employer was liable in damages for the pure negligence of a fellow servant of the injured one.

Opinion filed September 10, 1906.

---

*Frank Antonsanti, Esq.,* and *Federico Schroeder, Esq.,* attorneys for plaintiff.

*Juan Guzman Benitez, Esq.,* and *Cay. Coll y Cuchi, Esq.,* attorneys for defendant.

RODEY, Judge, delivered the following opinion:

This is an action for personal injuries with damages claimed in the sum of $10,000, and costs. The occurrence out of which the cause of action grew took place about 5:30 o'clock, P. M., on April 2, 1906. By agreement of parties it was tried before the court without a jury. The official stenographer took notes of

---

NOTE.—That a servant does not assume risks arising from defects unless he knew of their existence and appreciated the danger, see note to O'Maley v. South Boston Gaslight Co. 47 L.R.A. 164; duty of master as to machinery and appliances, see notes to Richmond & D. R. Co. v. Elliott, 37 L. ed. U. S. 728; Union P. R. Co. v. Snyder, 38 L. ed. U. S. 597; Union P. R. Co. v. O'Brien, 40 L. ed. U. S. 767.

the evidence, and previous to making this statement of fact, the court has had the same re-read.

The plaintiff appears to be a mulatto, about twenty-two years of age, apparently only of medium intelligence, as he could not tell the name of the defendant, other than to say that it was known as La Compañia (the company). As the action is by the person injured, no question of survivor of action or dependent relative is involved.

The defendant is a Connecticut corporation legally engaged in the conducting of a sugar plant or "Central" at Fajardo on the eastern extremity of the island of Porto Rico. In connection with this manufactory, it is the owner of a few miles of railroad, equipped with locomotives, cars, etc., to haul the cane into the plant and the product and supplies to and from the ocean front, some 2 or 3 miles away.

It did not develop at the trial whether, as to the railroad part of the concern, it is a common carrier or not. This omission is, perhaps, immaterial under the law and the facts.

It appeared in evidence that, some time in the fall of 1905, the defendant received from the States some locomotives, including locomotive No. 1, which was the instrument of the accident complained of. That a man came from the States, set the locomotives up, ran them for a while, and turned them over to the defendant. That the particular train of the defendant, at the time of the accident, was engaged in hauling ballast and fence posts or telegraph poles—it is not stated which—on this piece of railroad. That the plaintiff for some time previous had been working in the repair shop of the defendant, but that a short time before the accident he had asked Mr. Bird, the superintendent, to be changed from that position, where he was getting 75 cents a day, to the position of fireman on one of the engines, where he would get a dollar a day. That the manager,

Diaz v. Fajardo Development Co.

shortly thereafter, found a vacancy for him as fireman on engine No. 1. That he had been engaged in that occupation about a week, or a little more, when the injury occurred. That the driver of this locomotive was a man named García, who, according to the evidence, had had considerable previous experience running stationary engines, and perhaps some little experience on locomotives previous to his being given the engine in question, which he had been running for a few months previously on these pieces of track around this plant, and down to the wharf. That, on the day in question, the engine was hauling five cars of ballast along the track, and was pushing, at the same time, a car load of posts or poles, which were being distributed along the railroad. That, after the poles were all distributed, the train was stopped. The plaintiff, who had been importuning the engine driver during the day for a chance to clean the grate or ash pan of the locomotive, but had been deterred from doing it because they were too busy, or for some other reason, finally obtained the leave about 5:30 o'clock, as stated. That he at once threw the necessary tools out of the engine cab on to the ground, got down and went under the engine, and proceeded to rake the ashes out of the grate or ash pan.

The engineer testifies that, at the same instant, he got down out of the engine, after having stopped it, set the lever on the dead line and set the brakes. Several workmen were standing or sitting on the empty platform car, from which the poles had been unloaded, in front of the locomotive, at this time. The engineer states that he intended to go off in the field for sanitary reasons. The conductor of the train testifies that, at this instant, he was off on the same mission. The evidence of the plaintiff is that, at this instant, after he had commenced raking the ashes and *débris* out of the grate of the engine, it suddenly started, and he yelled in fear of his life, "Master, the engine is

killing me," or words to that effect. The engineer testifies that he was still close to the engine on the ground, when it started to move, and that he heard the cries of the plaintiff from beneath, whereupon he instantly jumped aboard, found the lever just as he had left it, and for a second or two, responding to the excited and conflicting yelling of the workmen on the ground outside and on the car ahead, and to the cries of the plaintiff under the engine, to go forward or back, adjusted the levers, grabbed the throttle and moved the engine quickly forward and back about a foot or so, once or twice, in response.

It was shown that, when the engine began to move, the plaintiff, while screaming for his life, as stated, proceeded to try to crawl out from beneath, but it is manifest from the evidence that he put his hand on the rail, because one of the wheels crushed his right hand and arm flat up to a point about midway between the elbow and shoulder, so that the arm just below the shoulder had to be amputated that same night. It is also in evidence that the defendant has paid the doctor bills and other expenses in and about the recovery of the plaintiff.

The engineer testified that the engine started slowly. A witness, who was on the flat car in front, states that it started pretty suddenly and gave him and the others a shock, on the platform car, and that, at the same instant, he heard the cries of the man beneath, and that they all rushed to the scene where he was caught under the engine. The conductor, being out in the shrubbery, as indicated, knew nothing material as to these facts. The engineer, when asked how it happened that this engine with the lever on the dead line and the brakes set, managed to start, stated that he had testified before the local court directly after it happened, where, it seems, they all had to respond in some sort of an action or proceeding to account for the accident, that the engine must have started because of some leak in the valve that

Diaz v. Fajardo Development Co.

admitted steam to the cylinder, and that he was still of that opinion. That, in fact, this had been noticed when the engine was first set up and started, but was not considered of sufficient importance to need correcting, and that he had felt when stopping it several times previously, that there was some leak in this valve. The plaintiff testified that he had no knowledge whatever of any defect in this engine; had seen it stop and start many times, and there was apparently nothing wrong with it, as far as he knew. The engineer said that he had never told anybody about this defect he had noticed, but that the chief engineer or man in charge knew about it.

There was evidence that this defendant has no sheds or engine house to keep these locomotives in, but that it has a repair shop, near which there is a pit beneath the track, where such work as plaintiff was then doing could be done with safety, and that there was another pit of this kind down at the playa, or wharf. There was no positive evidence as to where it was customary to clean this engine grate, whether over the pit or on the level track, but that it was done every night, so that the engine was ready for work in the morning, and that the pits were the proper and safe place to do it from. The court is of opinion that it probably was done out on the track at times, because it is in evidence that the tools were carried along for that purpose.

Mr. Bird, the manager of the defendant concern, testified that this was a practically new locomotive, and was in perfect order before and at the time of the accident, and is so still. Mr. Lademann, assistant engineer of the defendant company, said that the locomotive was perfectly new and that it is in a perfectly good condition; and states that a locomotive like this can be made to run, "when you set the connecting rod right, and afterwards open the throttle," and that, "it won't run in

any other way." That "the reverse lever has to be set front or back just as you want the locomotive to run forward or backward." He claimed, too, that the ash box should be cleaned in the factory over a cleaning pit. He also testified that he examined this particular engine within a week of this trial, and that it is in very good condition, that it has not been touched, save to clean it, since the man, who came from the States for that purpose, set it up for the company last fall.

There is no evidence showing that this plaintiff was ever given any instruction as to his duties. There is evidence tending in that direction, but it is hearsay.

Mr. Arthur D. Paton, who is an engineer also for this defendant company, testified that he knows the engine in question, and states: "When the engine is stopped, the lever is on the dead point, the steam brake is applied and the hand brake is also applied, and the drip valve is supposed to be open. When the engine is started, the drip valve is closed and the brakes are both removed, and the reverse lever is set ahead or back, according to whether you want to go ahead or backward." He states further in answer to the question: If the brakes are applied to the machine and it is stopped, is it possible for the engine to run back? And his answer was: "Not if the engine is in good condition." And he explained that good condition meant that the valves, the steam box, and cylinders should be entire, unbroken, and be set correctly, and that this is the present condition of this particular locomotive; that it is. perfectly good. He claimed also that the ash box should be cleaned at the plant or at the playa, where these pits are.

Mr. Bird, the general manager, when asked, without objection, if he had any theory as to how this accident happened, stated that he believed the engineer was scared when the accident happened, and when he was called into court directly

Diaz v. Fajardo Development Co.

thereafter and brought to account for it, he probably excused himself in the way he has here testified, when, probably as matter of fact, the accident did not occur that way at all; but, having made the statement then, the engineer now has to stick to it, or admit it was false.

It is hard, on this sort of evidence, for the court to find exactly how this accident took place. It is settled law that the court, even when sitting as a jury to decide questions of fact, need not find the fact in accordance with uncontradicted testimony, if that testimony is by an interested witness, or is improbable or unreasonable. Quock Ting v. United States, 140 U. S. 417, 35 L. ed. 501, 11 Sup. Ct. Rep. 733, 851. This engineer is still in the employ of the defendant, but it may be that he does not like to confess that his forgetfulness or negligence resulted in the loss of an arm to this poor boy, the plaintiff. On the one hand, it looks unreasonable, if the conductor of the train was off in the shrubbery and the fireman was not at his post in the cab, that the engineer would want to start this train and go back to the place where they were to leave it at the quitting hour, which was fast approaching. And on the other hand, it is highly improbable that this locomotive, with the brakes set and the lever on the dead line, even though steam escaped into the cylinder, should start in this way.

The court believes that the real fact of the case is that this engineer never left the cab, but stayed there, and, after the fireman went beneath the engine to clean it, negligently forgot that he was there, and assuming that the conductor and the fireman were on the train somewhere, proceeded to start, and that, in his excitement because of the instant screaming of the man being injured, and the other workmen who were looking on, ran it a foot or so, as he said, forward and backward, catching the plaintiff's arm in the way stated, as the latter was

frantically trying to crawl out from under the engine to save his life.

The court saw all the witnesses, and heard them testify; and, as the average citizen in these modern times knows more or less about the caution that it is necessary for the owners of railways and of the dangerous machinery connected therewith, to exercise, in the employment of the help and in the selection and maintenance of the machinery, it is constrained to state that it does not think this defendant exercised proper care or caution in and about the conduct of its railroad. It is doubtful if it was good or cautious management to employ such an inexperienced boy as this plaintiff, at all on this locomotive; and it is doubtful if this engineer is a man such as ought to be intrusted with the management of such a dangerous piece of machinery. But, in any event, it is apparent to the court that the proximate cause of the injury was the careless act of the engineer in starting the locomotive while this man was under it. The plaintiff is not, in the opinion of the court, guilty of such contributory negligence in cleaning the ash box at the place indicated, as would prevent him from recovery on the ground of contributory negligence. He had no knowledge of the defect in the engine, if there was one; and the defendant could, notwithstanding the negligence of the plaintiff, if he was guilty of any, have prevented the accident, if it occurred because of the defect. Vargas v. American R. Co. 1 Porto Rico Fed. Rep. 292; Bosakowski v. American R. Co. 1 Porto Rico Fed. Rep. 277. A workman, of course, assumes the ordinary risks of his employment, but not against defects known to defendant, of which he had no knowledge, in appliances furnished him to do the work; the employer must furnish appliances that are reasonably safe. Ibid.

Even though it may have been dangerous to clean this fire

Diaz v. Fajardo Development Co.

box where he did, which is not admitted in the full sense, still it could have been done there without injury to him, were it not for the gross carelessness of the engineer, whichever way it occurred. And, as a matter of fact, if the engineer tells the truth, and this machine started after being stopped, because of a defect in the valve, the defendant is liable, because such a defect was certainly a patent defect to the defendant, while not patent to this workman; and therefore he took no additional risk on that account. One injured by doing an act in attempting to escape from a dangerous position can recover against a person who put him there or caused him to go there. García y Dávila v. American R. Co. 1 Porto Rico Fed. Rep. 81. Plaintiff would have been killed if he remained under the engine, as he thought, and he certainly would if it had not been stopped. So, in either case, the ruling of the court cannot be affected.

The question then arises whether, in Porto Rico, under the law, an.employer is liable to a servant for the pure.negligence of a fellow servant. The general rule in the several states of the United States is that the employer would not be so liable. In suits at law this court, like any United States court in the States, is bound to follow the local statutes, and the interpretation put upon them by the local courts, in so far as they may be constitutional, and we are bound here "to adapt ourselves, in cases other than of equity and admiralty, to the local procedure and practice of Porto Rico." Perez v. Fernandez, 202 U. S. 80, 50 L. ed. 942, 26 Sup. Ct. Rep. 561.

It is contended that under §§ 1803 and 1804 of the Civil Code of Porto Rico, which is an old law re-enacted, this plaintiff can recover; and, if this is so, the damages can be as high as the amount sued for, as it has been held that nine or ten thousand dollars for the loss of an arm by a brakeman or

II. PORTO RICO.—11.

fireman on a railroad is not excessive. Baltzer v. Chicago, M. & N. R. Co. 89 Wis. 257, 60 N. W. 716; Watson, Damages for Personal Injuries, § 371.

Those sections of the local law provide: "That a person who, by act or omission, causes damage to another, when there is fault or negligence, shall be obliged to repair the damage so done." and that: "Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employees in the service of the branches in which the latter may be employed or on account of their duties."

We do not think that these sections of the Code now apply to this sort of an action, but there is a law we think does apply. Counsel for defendant have submitted for our inspection a typewritten copy of a decision rendered on June 19, 1905, in the supreme court of Porto Rico, in cause No. 54, Claudio v. Cortinez. In that case the court states that: "The action is based on the provisions of the act of March 1, 1902, which is found in Revised Statutes of Porto Rico, pp. 150 to 156, inclusive."

It does not appear whether that court intended to hold that it was simply optional with the plaintiff to bring his action under the act of March 1, 1902, instead of under §§ 1803, 1804, before referred to. However, an examination of the former act will show that it is a complete employers' liability act in itself, and somewhat elaborate in its provisions, and that it radically changes several common-law rules on the question of liability of masters to servants for personal injuries. Among other things, it limits the recovery to the sum of $2,000. Being the later voice of the legislature, in so far as may be necessary for this particular action, under well-known rules of construction, we are bound to hold that it is an exclusive remedy, and that there is no power in the court to grant a

Diaz v. Fajardo Development Co.

judgment to plaintiff here for more than the amount thus limited. We do not think that this view in any manner conflicts with the law as decided by the circuit court of appeals of the eighth circuit in its exhaustive opinion in Denver & R. G. R. Co. v. Norgate, 6 L.R.A.(N.S.) 981; 72 C. C. A. 365, 141 Fed. 247, which went up from Colorado. We are brought to this view, because of the difference between the Colorado statute and that of Porto Rico. In proof of the intention of the legislature of Porto Rico to make this act exclusive, under the facts aforesaid, it will be noticed that the words in the opening line, "after the passage of this act," give it peculiar significance. The material portion of the law in question is now known as § 322, Civil Code of Porto Rico, and is as follows:

"Section 1 (322). That where, after the passage of this act, personal injury is caused to an employee who is himself in the exercise of due care and diligence at the time: (1) By reason of any defect in the condition of the ways, works, or machinery, connected with or used in the business of the employer, which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and intrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition; or (2) by reason of the negligence of any person in the service of the employer intrusted with the exercising of superintendence whose sole or principal duty is that of superintendence; or (3) by reason of the negligence of any person in the service of the employer who has charge of, or physically controls, any signal switch, locomotive engine, car, or train in motion.

"Section 2 (323). That when an employee receives a personal injury under any of the conditions enumerated in § 1 (322) hereof, he may bring an action against his employer

before the proper district court, to recover damages for such injury. The damages so recovered shall not exceed the sum of $2,000."

Sec. 323 also has provisions that, in assessing the damages, consideration must be taken of the degree of culpability of the employer or servant, and of the amount of money paid by the employee for medical attendance, expenses, etc., and of various other things in the rendition of the verdict or judgment; all of which will be considered by the court in this case.

A statute of this character, which largely, if not entirely, does away with the fellow-servant rule, is held not to be unconstitutional, in Missouri P. R. Co. v. Mackey, 127 U. S. 205, 32 L. ed. 107, 8 Sup. Ct. Rep. 1161; and it would seem that the present policy of Congress, certainly as to common carriers, is in the same line; because, on June 11, 1906 (too late to apply to this case, although it is probably applicable to Porto Rico), it enacted the now famous employers' liability act, without fixing any definite limit as to damages in it. Session Laws 59th Congress, chap. 3073, p. 232. It seems also that the converse of the doctrine of the English common law, that a personal action dies with the person, is the rule under the civil law in Porto Rico, save where modified by statute. Borrero v. Compañia Anonyma de la Luz Electrica, 1 Porto Rico Fed. Rep. 144.

It follows from the views here expressed, that the defendant is liable in damages within the limit of the act of March 1, 1902, aforesaid, only, and therefore, taking into consideration all of the matters and things required to be considered by § 323, above referred to, the court finds for the plaintiff in the sum of $1,850, and judgment will be entered for that amount, in accordance herewith.