## JOSÉ PEREZ Y FERNANDEZ

*v.*

## JOSÉ ANTONIO FERNANDEZ Y PEREZ ET AL.

Mayaguez, No. 70.

and

## JOSÉ A. FERNANDEZ

*v.*

## JOSÉ PEREZ Y FERNANDEZ ET AL.

Mayaguez, No. 184.

<hr>

When, in a hearing to vacate a final decree already entered, the facts showed a conspiracy on the part of defendants to defraud plaintiff of his rights, and did not otherwise show a meritorious defense, the application will be denied.

Opinion filed July 22, 1908.

*Mr. F. L. Cornwell* and *Mr. N. B. K. Pettingill,* for José Antonio Fernandez y Perez et al.

*Mr. Francis H. Dexter* and *Mr. T. D. Mott, Jr.,* for José Perez y Fernandez et al.

RODEY, Judge, delivered the following opinion:

The issue before us at the present time is whether or not the respondents José Perez y Fernandez and Victor Ochoa, or either of them, should be permitted to enter their or his appearance in suit No. 184, above mentioned, and have the decree therein set aside, and they or he be permitted to defend; and, further, whether the execution in suit No. 70, above, should be further stayed, and the marshal of this court restrained from selling certain property he has levied upon thereunder.

The history of the controversy is peculiar. In November, 1901, José Perez y Fernandez brought a suit in this court before a former incumbent of this bench for damages for an alleged wrongful attachment, against José Antonio Fernandez y Perez, the complainant in suit No. 184, above, and recovered a verdict for the sum of $7,000. The defendant, although he sued out a writ of error from the Supreme Court of the United States in the case, did not give a supersedeas bond, and, on the lapse of the sixty-day time limit, the other side promptly issued execution against him, and he had to pay the judgment. Afterwards he won his suit in the Supreme Court of the United States (see Perez v. Fernandez, 202 U. S. 80, 50 L. ed. 942, 26 Sup. Ct. Rep. 561), where a full history of the litigation up to that time will be found. That tribunal, of course, immediately sent down its mandate, under which José Antonio Fernandez y Perez

promptly got a judgment before us of restitution for something over $10,000, including interest and costs. He at once, of course, endeavored to get his money back. All his efforts in this behalf proved futile, as José Perez y Fernandez was in Spain, and had, in the meantime, disposed of all his property in Porto Rico. His attorneys and others disclaimed any interest in the matter, and all parties concerned denied ever having received any of the money that was wrongfully collected. José Antonio Fernandez y Perez, the man who had thus lost his money, then became complainant in suit No. 184, above, which was a bill in equity against José Perez y Fernandez, Victor Ochoa, their wives, and many others, by which he sought to show that a lot of property situated in and around Mayaguez, in Porto Rico, and which had been transferred in all sorts of ways, really belonged to said José Perez y Fernandez, the party who had, as found by the Supreme Court of the United States, wrongfully gotten his money. He obtained personal service on all of the parties that he could, and obtained, after much trouble, substitute service upon said José Perez y Fernandez and Victor Ochoa, and, on the default of everybody connected with the case, for no one seemed to care to defend, obtained a decree *pro confesso,* and thereafter a final decree, by which the property mentioned was held to be, in truth and in fact, the property of José Perez y Fernandez, then and now absent in Spain. No effort could induce any of these absent parties, or even those who were present, to appear and defend the cause. The decree in suit 184, above, after declaring the property about which the litigation was pending to be, as stated, in truth and in fact the property of José Perez y Fernandez, provided that execution might issue against the same under the judgment on the mandate in suit No. 70,

which had been reversed, as aforesaid, by the Supreme Court of the United States.

As soon as the marshal levied upon the property under the execution, as authorized by the decree, and about the time he was to make a sale in April, 1908, T. D. Mott, Jr., Esq., suddenly appeared and moved the court for leave to come in and defend on terms under § 738, U. S. Rev. Stat., as amended in 18 Stat. at L. 472, chap. 137, for José Perez y Fernandez and Victor Ochoa.

It seems that the property had, for some time, stood in the name of Ochoa, who had foreclosed a mortgage on it, or had the property summarily adjudicated to him under it, but which mortgage, by the terms of the decree in cause 184, had been held to be fictitious. It appeared further that Ochoa, either in good faith, or, as alleged, with a view to aiding Perez y Fernandez in avoiding the payment of this money, had, shortly before this time, transferred most of the property levied on to a Mrs. Blanco, who was then and is still living in Spain, never having lived in Porto Rico at all, and who, as it is said, is the mother-in-law, or some near relative, of the said José Perez y Fernandez, the party who originally got the money wrongfully.

The execution was thereupon stayed from time to time while counsel were being heard at length, as will be seen by the several orders in the files. The controversy was very extensive. The complainant in suit No. 184 filed a large number of affidavits to show that these applicants have always had full knowledge of the suit and had copies of the notice of publication sent to them, etc. At first we held that Mr. Mott was unable to show sufficient authority to appear for either of the parties he claimed to represent. Later, he procured a cablegram or two which tended, in some measure, to show his authority.

Perez y Fernandez v. Fernandez y Perez.

About this same time he also filed a bill in equity for the most recent alleged purchaser of most of the property, the said Mrs. Blanco, and which has become suit No. 549 on our equity docket. By this suit he sought to enjoin the marshal and others from making the sale of this property.

On consideration of the matter, we again stayed the sale under the execution for a little over a month, or until June 8th, 1908, during which time Mr. Mott was to make a complete showing in the premises as to his right to appear for all the parties he claimed to represent, and, further, he was to make a showing generally as to the merits of the defense, the details of which order can be seen by a reference to it as it appears in the files. Shortly before the expiration of this time, on June 2d, 1908, the judge of the court had to make a short trip to the States, and hence entered an order that the matter should remain *in statu quo* until the further order of the court. We returned to the island on July 2d, 1908, but, owing to the pressure of other court matters, this controversy was not again taken up until Tuesday, the 21st day of July, 1908, when a full and complete hearing was had in the premises. Mr. Mott, on this latter date, produced certain affidavits and powers of attorney in the premises, all of which appear in the files. They certainly authorize him to appear and represent both Perez y Fernandez and Victor Ochoa, as well as Mrs. Blanco; but, as a compliance with the order of the court, entered on April 20, 1908, they are, in our opinion, wholly insufficient.

Moreover, we are thoroughly satisfied that Ochoa had knowledge and was served either actually or constructively with process in suit 184, as sworn to by the plaintiff in that suit. Perez y Fernandez confesses in his affidavits, recently filed, that he had

Perez y Fernandez v. Fernandez y Perez.

full knowledge of the proceeding, and his counsel, although he denies such allegation, does not appear to be very seriously insisting on his right to have the case reopened. Furthermore, Francis H. Dexter, Esq., who was the attorney for José Perez y Fernandez, is a resident here and a member of this bar. A rule was issued against him when the mandate came down from the Supreme Court of the United States, to return whatever portion of this money he had received as fees. He filed a long affidavit in the way of a showing against the allegation that he had ever received any such money. In an affidavit recently filed, Perez y Fernandez shows that he had communication with said Dexter during the pendency of suit No. 184. Now, José Perez y Fernandez lives near Victor Ochoa in Spain, and it is impossible to believe that, with all the communications occurring between Mr. Dexter and José Perez y Fernandez in Spain, and between the said José Perez y Fernandez and his business associates here in Porto Rico, and with the Spanish consular agent, one Mr. Pelegri, acting as agent for Ochoa both in the foreclosure of his mortgage and in the sale of the property thereafter to Mrs. Blanco, and considering that all of the parties in possession of any of the properties here in Porto Rico were personally served, that Ochoa did not know of the pendency of suit No. 184. In fact, before rendering the decree in that case, we waited for two or three months and made many inquiries with a view to inducing somebody to come in and defend.

It would not be profitable for us to go into more detail at this time and place, in this expression of our views, because we are satisfied from the arguments and the entire record in this controversy, to which we have given close scrutiny, and we so find, that the allegations of the bill in case No. 184 are

Perez y Fernandez v. Fernandez y Perez.

absolutely true, and that Victor Ochoa never did, in good faith, own the whole or any portion of the property in question, and that it has all along belonged to José Perez y Fernandez, the original debtor. We are further satisfied from the arguments and record, as aforesaid, and from all the facts and circumstances of the case, that the sale by Ochoa to Mrs. Blanco was in fact simulated, and not made for any consideration or in good faith. We are further satisfied that all three of said persons have entered into a conspiracy to keep the complainant in suit No. 184, aforesaid, from getting his money, and that neither of them have had or now have any good or proper or meritorious defense in the premises. Firmly believing this, as we do, and further finding, as we do, that no proper showing has been made under our order of April 20th, aforesaid, or under the statute, we are constrained to deny and do deny both the application of José Perez y Fernandez and Victor Ochoa to have the decree in cause 184, aforesaid, set aside, or the sale under the execution in cause 70, aforesaid, further stayed. To do so would serve no useful purpose, and would but be in furtherance of injustice and delay.

In cause 549, above referred to, a full hearing was had on the demurrer at the same time as the hearing last aforesaid. We are constrained to hold, for all of the reasons above set out, and for the reasons stated in the several grounds of demurrer, that the same should be sustained.

Therefore proper orders will be prepared and entered, denying the right of José Perez y Fernandez and Victor Ochoa to come in and defend at this time in either of said suits Nos. 184 or 70, aforesaid, and permitting the marshal to proceed with the sale of the property levied upon. A similar proper order

will be prepared and entered, sustaining the demurrer in equity suit 549, aforesaid, and dismissing the bill.

We feel that, in the interest of justice, all this ought to be done, and complainant in suit No. 184, José Antonio Fernandez y Perez, should not be further kept out of the money that is justly due him, by what we believe to be a pure conspiracy of all of these parties. As these orders amount to a final disposition of the controversy in this court, if either of the petitioners or Mrs. Blanco feel themselves aggrieved, they have their remedy before the Supreme Court of the United States, and, on proper application therefor, supersedeas will be granted them.