# BERNARDO AGUILO FUSTER

*v.*

# FRANCISCO MARQUEZ CUELLO.

---

San Juan, Law, No. 370.

1. The fact that the mortgagee mistook his remedy to foreclose a mortgage, and attached and sold other property than that mortgaged, the same not having been alleged to have been done maliciously or without probable cause, does not give the mortgagor a right to an action at law for damages.

2. Section 1803 of the Civil Code does not cover such a case.

Fuster v. Cuello.

3. The mortgagor may offset, in the new suit pending on the equity side of the court to foreclose the mortgage, against his debt, damages sustained by reason of the loss of possession, products, and value of other property taken by the mortgagee in the course of the first proceeding, and still held by him.

4. Equity, having obtained jurisdiction for one purpose, will retain it for all.

**Order filed September 22, 1906.**

*Willis Sweet, Esq.,* attorney for plaintiff.

*T. D. Mott, Jr., Esq.,* attorney for defendant.

RODEY, Judge, delivered the following opinion:

To an understanding of this case a statement is necessary. In 1899 the plaintiff owned a tract of land at Lares, Porto Rico, consisting of 49 acres, and mortgaged it to the defendant. The payments on the mortgage became due from time to time over several years thereafter. After one of the instalments became due and was not paid, the defendant brought an action to foreclose his mortgage, and, in addition to seizing or attaching the property mentioned in his mortgage, also attached or seized other property which was mortgaged to other people. Considerable litigation ensued. He finally succeeded, but the plaintiff appealed from the decision to the supreme court of the island. The defendant, however, gave a forthcoming bond, under procedure that gave him that right, and went on and sold the mortgaged property and bought it himself. The supreme court of the island reversed the case, holding that the defendant had mistaken his remedy and had attempted to proceed under a local law for the foreclosure of mortgages, that had been repealed, and the result was that all the proceedings he had taken were

held for naught. He thus found himself in possession of, and vested on the record with, this plaintiff's property, and collecting the income from it, without proper legal right, and he so still remains. It was, of course, then obligatory upon him to begin all over again in the local court; or, as this court had jurisdiction on other grounds, he could dismiss his suit there (and it probably would have been dismissed for him anyway under the mandate of the supreme court) and bring a new suit, either in that court or this, to foreclose the mortgage regularly. He chose the latter mode. The suit is now here as No. 404, on the equity docket.

The plaintiff, in the meantime, filed this suit at law here, claiming that he was damaged in the sum of about $10,000 by all these illegal proceedings in the local court against him. He alleged that the attaching of more than was in the mortgage, under the mistaken executory process, caused the person who had the mortgage on such additional property to foreclose it at a time when the plaintiff was about to make a sale of it for a sum sufficient to pay off all his debts, and that this deprived him of such opportunity, and resulted in this additional property being sold for much less than its real value, under the other mortgage, and that he lost the entire use and enjoyment of the land in question which was mortgaged to this defendant, for about a year and a half; and that such use and enjoyment was worth over $3,000. That his loss because of the additional attachment was about $5,000. That the crops gathered by the defendant since he has had possession, over and above the value of the use and occupancy aforesaid, are worth enough to make up the $10,000, all as set out in his complaint. There are other items of damage alleged in the complaint, unnecessary to mention.

After other proceedings, the defendant here demurred. It

is not profitable to state the different grounds of demurrer; they are general. The matter of an attachment and damages sustained thereunder, and the mode of having the same assessed, does not seem to be well regulated or understood under the local practice in Porto Rico. The Supreme Court of the United States in a recent case (Perez v. Fernandez, 202 U. S. 80, 50 L. ed. 942, 26 Sup. Ct. Rep. 561) had difficulty with the question, and held that, in regular attachment suits, the local law provides that the damages must be assessed in the same proceedings at the time the attachment is dissolved, and that a new or separate suit for such damages does not lie. The suit here being discussed was, of course, not strictly an attachment suit. It was really only an effort to foreclose a mortgage; but the defendant attached or seized in some way, as stated, considerably more property than was mentioned in his own mortgage, and perhaps did cause damage to the plaintiff, but he no doubt had to pay out considerable money in the way of costs, expenses, attorney's fees, etc., in the meantime, and still has to begin anew.

We have examined the question with some care, and it is not easy to decide. On the one hand, it would appear as though there must be a remedy for a defendant in attachment who is injured by the plaintiff's acts, and in most of the states such injury is provided for by requiring the giving of a proper attachment bond. On the other hand, the plaintiff in this particular attachment or seizure was certainly trying in good faith to collect his mortgage, but unfortunately mistook his remedy. At all times during the whole procedure in the local court, the defendant (plaintiff here) had a complete remedy in his own hands, by paying the debt which was due. In fact, his default in that regard brought all the trouble upon him.

Fuster v. Cuello.

The action here, it appears, is based on § 1803 of the Civil Code of Porto Rico, which provides that, "a person who, by an act or omission, causes damage to another when there is fault or negligence, shall repair the damage so done." We are inclined to think that the acts here complained of do not come strictly within that statute, and it is even doubtful if it was intended to apply to such a case.

An examination of the authorities indicates that the general rule is that: "It is the lawful right of every man who believes that he has a just demand against another, to institute a suit and endeavor to obtain the proper redress. If his belief proves to be unfounded, his groundless proceedings may possibly cause a very serious injury to the defendant; the mere assertion of a serious claim at law being capable, in some circumstances, of affecting materially one's standing and credit. But to treat that as a legal wrong which consists merely in asserting a claim which cannot satisfactorily be established would be plainly impolitic and unjust. The failure to sustain it might possibly have come from the death of a witness or other loss of testimony, from false evidence, from a mistake of law in the judge, from misconduct in the jury, from any cause rather than fault in the plaintiff himself. To compel him, as the penalty for instituting a suit he cannot sustain, to pay the costs of a defense, is generally all that is just, and is sufficient to make persons cautious about instituting suits which they have reason to believe are baseless." Cooley, Torts, ¶ 180; Drake, Attachm. ¶ 114.

It appears to be the law that, in the absence of a statute, no action lies against a plaintiff who loses an attachment suit, unless he sued it out maliciously, or perhaps without probable cause. Drake, Attachm. ¶ 726; King v. Montgomery, 50 Cal.

115; Stewart v. Sonneborn, 98 U. S. 187, 25 L. ed. 116. The text writers go to considerable length in defining this rule as just. Without quoting, we cite: Drake and Cooley as above; Day v. Bach, 14 Jones & S. 460; Palmer v. Foley, 71 N. Y. 106; Sturgis v. Knapp, 33 Vt. 486; Lexington & O. R. Co. v. Applegate, 8 Dana, 289, 33 Am. Dec. 497.

After consideration, we are of opinion that the defendant is not liable for damages incurred, unless his suit was without probable cause or malicious, and the complaint here makes no such allegation. The expense he was put to, apart from the trouble connected with the suit, all of which proved worthless to him, having been induced by the default of this plaintiff in failing to pay his debt, is, we think, sufficient punishment. We do not desire to be understood as in any manner justifying, on the part of the defendant, the holding possession of and using the mortgaged land and premises, and taking the products thereof, and other property of the plaintiff as alleged. We are inclined to the belief that whatever the defendant has appropriated in that regard can be set up as payment in the suit now pending in this court for a foreclosure of the mortgage, and that, in order to permit this to be done, equity, having cognizance of the case for one purpose, will keep it for all purposes, and all transactions growing out of the same matter can, we think, within the lines here defined, in order to shorten litigation, be settled in that proceeding, even if it shall turn out that any question of unliquidated values or damages, if they are allowed, has to be submitted to a jury.

The demurrer to the entire complaint will therefore be sustained with costs, without prejudice to the plaintiff to plead, answer, or cross-complain in the foreclosure suit as here indicated.