# JOSÉ FERNANDEZ
## *v.*
# JOSÉ PEREZ ET AL.

Mayaguez, Equity, No. 184.

PROCEEDING TO ESTABLISH A CREDITOR'S TRUST.

International Law—Right of Spaniards to Contract.

    1. The treaty of Paris overrides the provision of the act of 1887 prohibiting aliens from owning land in the territories. Spaniards, whether residents of Porto Rico or not, have the right to buy and sell lands there.

Same—Repeal of Notarial Law.

    2. The repeal in 1906 of the notarial law by the legislation of Porto Rico did not affect transactions between Spaniards in Spain, relating to land in Porto Rico.

Fernandez v. Perez.

Trust—Demurrer.

    3. For the purposes of this case, the bill seeks to declare a trust in favor of the complainant, and not to set aside fraudulent conveyances.

Bona fides—Circumstances.

    4. Good faith is presumed, and circumstances which can be interpreted one way as well as the other will be construed against the complainant as being in good faith.

Same—Mortgage Law.

    5. Section 40 of the Mortgage Law, as to defects in a conveyance, applies to fraudulent conveyances, and not to a bill to establish a trust.

Lis Pendens—Filing Bill.

    6. The filing of a bill in equity does not in Porto Rico constitute a *lis pendens* until such notice is registered in the deed registry.

Mortgage Law—Equity.

    7. The Mortgage Law is the law of real property in Porto Rico. Its principles are in many respects those of a court of equity. Such a court does not interfere with this law, but acts upon the persons holding title under it.

Mortgage Law—Effect of Notices.

    8. The Mortgage Law prohibits the record of deeds inconsistent with the recorded title, but authorizes registry of cautionary notices, which legal proceedings may determine to supersede the recorded titles.

Registry—Real and Personal Rights.

    9. The right arising under a judgment is personal, like that under attachment, and not a real right.

Equity—Judgment Creditor.

    10. The same principle applies in equity, which subordinates a subsequent docketed judgment to an equitable lien *in rem*.

Lis Pendens—When Real Right.

    11. When the *lis pendens* concerns real property it is a real right, and affects a bona fide purchaser and the similar parties known as terceros under the Porto Rico Civil Code.

Fraud—Circumstances.

    12. Fraud is generally shown by circumstantial evidence, but is

not presumed,—especially when these circumstances have another reasonable explanation.

Opinion filed April 9, 1914.

---

*Mr. N. B. K. Pettingill* for complainant.

*Mr. Thos. D. Mott* for defendants.

HAMILTON, Judge, delivered the following opinion:

This is said to be the dean of all cases on the calendar of this court, and now comes on for a final decree.

One José Perez was in business at Mayaguez, and a creditor of his for 6,000 pesos, Claudio Barro, died in Spain in 1899. Complainant Fernandez was the attorney in fact of Barro's executor, and sued Perez in attachment in the United States provisional court on January 4, 1900. The next day there was filed for record in the registry of property a mortgage by Perez to Victor Ochoa for 20,000 pesos, at five years, without interest, conveying five pieces of land in Mayaguez, described in the bill at bar. On October 22 of the same year, Perez executed a further mortgage for $5,000 to one Maristany upon the same land and one additional tract. The point was raised that a foreign executor cannot sue in the Federal court, and the Fernandez suit was dismissed. Perez thereupon sued Fernandez on December 12, 1901, for damages resulting from the attachment, and recovered judgment for $7,000, from which Fernandez appealed. He was successful April 23, 1906, in the United States Supreme Court. 202 U. S. 80, 50 L. ed. 942, 26 Sup.

Ct. Rep. 561. He had not filed a supersedeas bond (Perez v. Fernandez, 1 Porto Rico Fed. Rep. 148), and so Fernandez proceeded on September 19, 1906, to a judgment of restitution in this court, which succeeded the provisional court. There was, however, a return of *nulla bona,* and Fernandez accordingly brought this suit on October 10, 1906, and ten days later noted a *lis pendens* thereof in the registry at Mayaguez.

On January 31, 1908, a final decree was obtained in this suit, subjecting property described in the bill to satisfy the judgment of restitution. Before the date of sale Perez and Ochoa, who were defendants brought in by publication, but who had not appeared, moved to open the decree and be allowed to defend, and Perfecta Blanco filed a bill setting up a conveyance of the property to her. The Blanco claim came about from the foreclosure on December 14, 1905, by Victor Ochoa, of the Perez mortgage of 1899. The property described in the mortgage was adjudicated to Ochoa on June 8, 1906, and the judicial deed therefor was executed five ,days later, and promptly recorded. On July 15, 1906; Ochoa and wife, who had meantime retired to Spain, sold by notarial deed to Perfecta Blanco four of the five parcels described in the bill for the price of $10,000. Perfecta Blanco was the mother-in-law of José Perez, whose wife had died in 1905. The deed to Perfecta Blanco was filed for record at Mayaguez, October 24, 1906.

The decree was not opened, and, upon appeal to the Supreme Court, Perez and Ochoa were on April —, 1911, admitted to defend, and in August, 1911, the complainant filed the present amended and supplemental bill, which made Perfecta Blanco also a defendant. No further *lis pendens* was filed. Answers were filed and testimony taken.

A demurrer in this case has been recently argued, setting up the statute of limitations of six years; but this was overruled by the court. (ante, 342.)

This case presents many questions. There are first to be considered those which relate to the form of the instruments involved, and afterwards those affecting their essential validity.

1. It is argued that, as all parties concerned are Spaniards, the conveyances between them after the American occupation are invalid under the act of March 3, 1887, to restrict the ownership of real estate in the territories to American citizens. 24 Stat. at L. 476, chap. 340, U. S. Comp. Stat. Supp. 1911, p. 1167. On this theory, if Perez could not convey to a Spaniard, the title remains in him, subject to any proper claims of his creditors. It is true that for many purposes Porto Rico is to be considered as a territory of the United States. It has an organized government, and its governor, for instance, is entitled to demand the return of fugitives from justice under the law applicable to governors of territories. New York ex rel. Kopel v. Bingham, 211 U. S. 468, 53 L. ed. 286, 29 Sup. Ct. Rep. 190. It was, however, Spanish territory before it was ceded to the United States, and the law governing the rights and duties of the Spanish inhabitants is found in the treaty of Paris. To this claim the treaty, in its spirit if not in its terms, is a sufficient answer. Porto Rico was Spanish, and became American with the agreement that "Spanish subjects, natives of the Peninsula, residing in the territory, over which Spain by the present treaty relinquishes or cedes her sovereignty, may remain in such territory or may remove therefrom, retaining in either event all their rights of property, including the right to sell or dispose of such property or of its proceeds; and they

shall also have the right to carry on their industry, commerce, and professions." Article 9 of the treaty of Paris of December 10, 1898 [30 Stat. at L. 1759]. "They shall have the right to appear before such courts, and to pursue the same course as citizens of the country to which the courts belong." Article 11 of the treaty of Paris. It would be impossible to hold that there was not under this treaty the right of free contract between Spaniards residing in Porto Rico. The treaty, though brief, is remedial in its nature, and will be construed liberally in favor of citizens of the losing nation. Nothing less is becoming the dignity of the United States.

It is true that defendant Blanco was not a Spanish resident of Porto Rico, but she is protected by the old treaty with Spain which came into effect again upon the restoration of peaceful relations between the United States and Spain. Taylor, International Pub. Law, p. 604. That gave the citizens of each country the right to hold property in the other. 30 Stat. at L. 1759.

2. The deed from defendant Ochoa to defendant Blanco, bearing date July 15, 1906, is attacked upon the ground that on March 8, 1906, the legislative assembly of Porto Rico, by an act found on page 151 of the Session Laws, repealed the notarial law existing before that time, and enacted another which did not make any provision for acts of foreign notaries. It might be that execution of foreign deeds would be controlled by § 1750 of the Revised Statutes, but this would not aid, inasmuch as the execution by Ochoa was before a Spanish notary, and not before an American consular official.

The conveyance of lands is subject to regulation by the *lex loci,* the law of the country within whose jurisdiction the prop-

erty lies. Arndt v. Griggs, 134 U. S. 316, 33 L. ed. 918, 10 Sup. Ct. Rep. 557. The point raised is not as to the validity of the deed between the parties, but that, conceding this, if it was not properly recorded it could not bind third parties, such as the complainant herein. And it could not be recorded unless it was properly acknowledged. Article 2 of the Mortgage Law provides for the recording, in the registries, of "deeds conveying or declaring the ownership of real property and of property rights therein," and article 3 requires that "in order to permit of the record of the instruments mentioned in the foregoing article, they must be embodied in a public instrument, final judgment, or authentic document." A public instrument or authentic document is one executed in due form before a notary, and certified by him. "Notaries are the only officials authorized to certify contracts or other extra-judicial instruments that are executed in their presence in accordance with law." Under § 1 of the notarial act of Porto Rico of March 8, 1906, this law, however, is limited to notaries in Porto Rico.

By § 41 of that act "the notarial law and its regulations are hereby repealed, and all other orders, laws, and decrees in conflict herewith are also hereby repealed." If this is to be construed as repealing the old Spanish notarial law, it would, so far as Porto Rico is concerned, repeal the treaties by which the United States agreed that Spaniards should have the right of acquiring property in the United States. This could not be permitted, and it is not to be assumed that the legislative assembly intended any such result. In point of fact, as soon as the error was discovered a new act was passed remedying the omission. It must be held, therefore, that the new Mortgage

Law did not repeal the old so far as affected the rights of Spaniards to deed or acquire real property in Porto Rico.

3. Upon demurrer it was settled, for the purposes of this case, that the bill at bar is one to declare a trust in favor of the plaintiff on the theory that, while deeds had been exchanged which nominally passed the title, they were always upon the understanding that in point of fact the holder of the title held it for the defendant Perez. In this way the statute of limitation of four years was avoided (Civil Code, § 1268), and the proof thereof must not be such as to establish a creditors' bill by showing fraudulent conveyances, but must show that the fraud in question was not intended to benefit anyone by mesne conveyances except the original mortgagor, Perez.

4. Defendant Blanco would be liable if she participated with Ochoa in actual fraud in the attempt to cover up Perez's ownership from the complainant in this case. Did she do so? This the complainant seeks to prove by pointing out suspicious circumstances in her purchase, and of these the first is that the sale to Blanco was only a month and one week after the foreclosure of the mortgage by Ochoa. The date of the deed to Blanco was July 15, and the deed to Ochoa had been June 13, recorded four days later. The defendant Blanco explains this by the statement that her sons had been resident in Porto Rico, and thought the investment a good one. If Ochoa on his side lost money by the deal, it would seem to show that Blanco on her side must have made a good bargain. Defendant Blanco was the mother-in-law of Perez, and she was supporting his children. Transactions between relatives are scanned closely, but in this case the transaction, so far as shown, is not between defendant Blanco and her son-in-law, and may well be explained

Fernandez v. Perez.

by her desire to help her grandchildren. It is pointed out that the money recited is in American currency, which might not be unnatural where the property was in American territory.

If there had been fraud in the transaction it would seem that the deed to defendant Blanco would have been sent for record by the first steamer after its execution on July 15. In point of fact, however, it was not recorded until October 24, 1906. This would hardly be the case if the transaction had been fraudulent. It is not possible that the notary antedated the deed, because of the machinery of recording papers. The notarial law then in force required that each entry should bear a successive number, and that the notaries should, during the first eight days of each month, file with proper officials indexes of the original instruments executed during the previous month. Article 33 of the old notarial law, and article 42 of the regulations. There was visitation of the notarial officials by the judges of first instance and by the Department of Justice. Article 40 of the notarial law. The rule is not very different in Porto Rico at present. The indexes are now filed on Monday of each week, and the visitation is by the judges of the district court. It would be practically impossible, therefore, for an instrument to be drawn in September and antedated as of July.

A good deal of light upon the bona fides of defendant Blanco is thrown by the fact that she has, during all the time since her purchase, left the rents, now amounting to several thousand dollars, on deposit with her agent, witness Lucas Ramos. It could hardly be that she would leave the fund within the jurisdiction of this court if she was aiding Perez, who, like herself, lived in Spain, to defraud his creditors.

5. Article 40 of the Mortgage Law says "it shall be under-

VI. Porto Rico—43.

Fernandez v. Perez.

stood that no price or its equivalent figures in such contract, when the notary does not certify to its payment, or if the contracting parties acknowledge that such payment was made prior to the execution of the contract, and this fact is not established." This provision by its terms applies to "conveyances under a gratuitous title to defraud creditors," and such may be revoked. The demurrer in this case has settled that this is not a creditors' bill, and it is not clear that § 40 applies to the case at bar. It is not part of the prayer that the antecedent deeds be revoked, but rather that they be upheld, and that the title which passed by them be declared held in trust for the complainant.

In other words, this is not a bill to revoke, or, to use the equitable expression, cancel the antecedent deeds. If it had been, it would have been a creditors' bill, and subject to the statute of prescription. Section 40, therefore, does not apply.

6. That defendant Blanco participated in any actual fraud, therefore, cannot be said to have been satisfactorily proven. It is argued, however, that nevertheless she had by operation of law notice of fraud on the part of Ochoa, which affected her title and made her legally a participant in such fraud. In other words, defendant Blanco is to be held as purchasing with notice of Ochoa's fraud, because, of the judgment against Perez and because the present suit was begun on October 10, 1906, by the filing of the original bill against Perez and Ochoa, and a notice of *lis pendens* of the suit was noted October 20 in the registry of property. This was after defendant Blanco's purchase from Ochoa, on July 15, 1906, but four days before the actual filing of her deed at Mayaguez. It is therefore necessary to determine what was the effect of noting *lis pendens*.

It has been held that the filing of a bill in chancery does

not, under the Foraker act, constitute a notice of *lis pendens* itself. Romeu v. Todd, 206 U. S. 358, 51 L. ed. 1093, 27 Sup. Ct. Rep. 724. The effect of this decision, however, was obviated in the case at bar by noting on the Porto Rican registry the fact of this suit. There is no question that this was proper, and that this has legal consequences. The question in this case is the extent of the application of *lis pendens*.

7. This brings up for consideration what is called the Mortgage Law of Porto Rico. This code, for it is such, relates not only to mortgages, but to all forms of conveyances, and the system grew out of conditions in Spain and her colonies. Its germs go far back into Spanish history, but the law in its present shape dates from 1861 in Spain, and was extended to Porto Rico in 1893.

It has become the law of real property in the island, and should be carried out in all particulars. It is to be observed in passing, however, that there is no conflict between this law and the principles of equity. In the first place, they are in many respects similar, and in practice there can be no conflict, because they act on different planes. The legal title is perfected and secured according to the notarial and mortgage laws, just as the legal title in England and America is perfected and secured according to the laws of conveyance and registration in those countries. The practice of equity does not affect or change this condition in the slightest. A court of chancery fully recognizes the title as held at law. It acts not upon the law, but upon the persons holding the title under the law. If he, while conforming to all the requirements of the law, has yet acted unconscionably, has acquired the title with someone else's money, or in some other way should be required to do

equity, he will be decreed to hold the title in trust, or to make conveyance of the title according to the legal forms, as the case may demand.

Equity principles to a large extent came from the Roman law, which in turn is the foundation of the Spanish and other civil law. In many respects, therefore, equity is enforcing the same principles which are found set out in the civil law, and the difference is often rather one of procedure than of principle.

8. The case at bar, so far as relates to defendant Blanco, presents the question of conflict and priority of claims under the registration law of Porto Rico. Ochoa's deed to Blanco was dated July 15, the *lis pendens* under the present suit was noted on the public registry on October 20, and the Ochoa deed to Blanco was filed for record on October 24, 1906. Did defendant Blanco under these circumstances take the Ochoa title with constructive notice derived from the registration of the *lis pendens,* or is she, to use the equity expression, a bona fide purchaser for value without notice?

The Mortgage Law in article 2 provides that amongst the instruments which shall be recorded in the registries are, first, "deeds conveying or declaring the ownership of real property or of property rights therein." It is further provided in article 3 of the Mortgage Law that, "in order to permit of the record of the instruments mentioned in the foregoing article, they must be embodied in a public instrument." The Civil Code in § 1184 defines public instruments as "those authenticated by a notary or a competent official, with the formalities required by law," and in § 1185 it is declared that "instruments in which a notary public takes part shall be governed by the notarial law." This requires in the consideration of the

matter an examination of parts of the Civil Code, mortgage law, and notarial law.

It is conceded that according to the Mortgage Law (art. 25) "recorded instruments shall be effectual against third persons only from the date of record," and article 17 provides: "After any instrument transferring ownership or possession of realty, or property rights thereto, has been recorded or a cautionary notice thereof made in the registry, no other instrument of the same or of a previous date may be recorded or noted, by which the ownership of the same estate or property right is transferred or encumbered." There is the difference, however, between a conveyance and a cautionary notice, that, while in the case of a conveyance there can be no subsequent deed recorded in conflict with it, in the case of a cautionary notice there may be a deed recorded conveying the title subject to the rights of the party filing the cautionary notice. In other words, under the Spanish registration system, the registrar cannot record any conveyance inconsistent with the last title of record, but he can and does note in the blank margin which is left in the registry certain notices, called cautionary notices, which may ultimately lead to a change of the title. Thus under article 70 of the Mortgage Law, "when the cautionary notice of a right is converted into a final record thereof, it shall produce its effects from the date of the notice," and under article 71, "real property or property rights, against which cautionary notices have been entered, may be alienated or encumbered, but without prejudice to the right of the person in whose name the cautionary notice was entered." The question in this case, therefore, so far as relates to defendant Blanco, is whether notice of *lis pendens* which was entered opposite the Perez title was one which could

be converted into a definite record of title. The law contemplates this in a proper case, for § 71 of the Mortgage Law continues: "If the conveyance made and recorded during the action relates to an estate the ownership of which had been claimed by an action of which a cautionary notice had been entered, in accordance with subdivision 1 of article 42 of this law, a certified copy of the final judgment in favor of the ownership of the plaintiff shall be a valid title from its cancelation by virtue thereof."

9. It will be observed that the law itself, in article 43 of the Mortgage Law, draws a distinction between those bringing suit to recover the ownership of real property or declaration or extinction of a real right, and others who have obtained an attachment of real property and the like. The former covers real rights, and the latter personal rights.

There can be no question, so far as relates to the record of the judgment, that there was merely a personal right involved. It was not a judgment or order against a specific thing, and so was not conclusive upon the title to anything. It comes within the scope of the Porto Rican act of March 8, 1906, to provide the manner of creating judgment liens on immovable property. Of this, § 6 provides:

"When a judgment has been recorded and indexed, as provided for in the preceding sections, it shall at once operate as a lien upon all the immovable property of the defendant or defendants, not exempt from execution, situated in the district where such abstract is recorded, and upon the immovable property which the defendant or defendants may thereafter acquire in such district, and such lien shall be a like nature and preference as those mentioned in paragraph 4 of § 1824 of the Civil Code."

Fernandez v. Perez.

Section 1824 of the Civil Code, referred to, provides for "credits, of which a cautionary notice has been made in the registry of property by virtue of a judicial mandate by reason of attachments, sequestrations, or execution of judgment with regard to the property entered therein, and only with regard to subsequent credits." This makes the lien of the recorded judgment a personal, and not a real claim. It would seem to amount to what is called a *jus ad rem,* and not a *jus in rem.* Manresa (12 Commentaries, p. 693) says that if, as here, "the cautionary notice was made to guarantee the results of a suit in which only a personal action was involved, this does not lose its primitive character because of the annotation which was ordered." He also adds, "It should be borne in mind that the preventive annotation of attachment to secure a credit which is purely personal cannot be the slightest obstacle to the declaration of the ownership in favor of a third person of the property noted."

10. The same result is reached if there had been no local law, and equity practice had been followed. Judgment creditors are not purchasers within the meaning of recording acts. The equitable doctrine is that a judgment binds only the actual interest of the judgment debtor, and is subject to all existing equities which are valid as against the debtor. 2 Pom. Eq. Jur. p. 1267, § 721. Thus, the equitable lien of a prior unrecorded mortgage upon a specific parcel of land takes precedence against the general legal lien of a subsequent docketed judgment against the owner. Id. p. 1270, § 721. It is a part of established equity jurisprudence that prior equitable interests *in rem,* including equitable liens upon specific parcels of land, have priority of right over the general statutory lien of subsequent

docketed judgments. Id. p. 1267, § 721. Being true of a mortgage, *a fortiori* this is true of a deed. There is no conflict, therefore, between equity jurisprudence and the statutory law of Porto Rico in this regard.

11. The same principle applies to the cautionary notice of *lis pendens* that applies to the recorded lien of a judgment. The cautionary notice depends upon the nature of the suit which is noted as pending. The stream cannot rise higher than its source. If the suit is *in rem,* or to enforce a right *in re,* it comes within the principle of the Mortgage Law, § 42 (1); if it is a claim *in personam,* it comes within the principles of the other subdivisions of § 42.

What, then, is the nature of the present suit? Is it *in rem,* or is it at most *ad rem?* Does it, to use the civil terminology seek to enforce a real or a personal right? The former binds what is known in equity as a bona fide purchaser for value, and this is practically the same as what is known under the Mortgage Law as a *tercero,* a third party. In article 27 of the Mortgage Law it is said that "for the purposes of this law those who have not participated in the recorded instrument or contract shall be considered as third persons," which, however, as Galindo suggests (2 Legislacion Hipotecaria, p. 297), is not as clear as it appears. A person may be a *tercero* for some purposes, and not for others, and this must be determined by the general principles of law and be the facts in each particular case. Personal creditors are not *terceros,* for they have no "real" right, and the object of the Mortgage Law is to insure the ownership (*dominio*) of immovable property. 2 Galindo, 313. That an attachment does not constitute a real right, and that its

annotation is not preferred to an unrecorded deed, was decided by the Supreme Court of Spain on January 28, 1903.

Ownership, according to Galindo, page 259, includes use, receiving the fruits, and disposition freely of a thing. If all of these rights coexist, that is ownership (*dominio*). If any one of them is granted, the ownership is dismembered and a real right is transferred. Title may remain although the right of use and receiving fruits is granted. The object of the suit at bar is to declare the title in defendant Blanco a naked title, and to have it devested for the benefit of the complaint. From this it would seem to follow that this suit affects real rights, and that the record of *lis pendens* would therefore concern a real right under Mortgage Law, § 42 (1). Romeu v. Todd, 206 U. S. 358, 51 L. ed. 1093, 27 Sup. Ct. Rep. 724.

Defendant Blanco would therefore be chargeable with knowledge of defects in her title by reason of the annotation of the *lis pendens* of this, a suit involving a real right, but not by that of the Fernandez judgment, which was for a personal claim. The defect alleged was fraud by Ochoa and Perez, and the existence of such fraud must now be investigated.

12. The suit of Perez against Fernandez, complainant herein, was filed November 18, 1901, and resulted on the 12th of the next month in a decree for $7,000, which was reversed on April 23, 1906, resulting on September 19, 1906, in a judgment of restitution for that amount in this court in favor of Fernandez. This was never paid, and the object of the suit at bar is to set aside a mortgage executed November 10, 1899, by Perez to Ochoa long before any obligation arose to Fernandez.

The complainant insists that this mortgage was simulated,

and as *indicia* of this fraud shows that .Perez was largely indebted, the execution was unusual in that the mortgagee did not appear before the notary, that the mortgagee charged no interest, that nothing appears on the books of Ochoa's company in regard to the loan of this 20,000 pesos, that the property was closed out to Perfecta Blanco for $2,000 less than the debt, that Ochoa waited a year before foreclosure, and in the foreclosure had no representative except one acting under the direction of Perez, and that Ochoa had nothing to do with the management of the property at any time.

Fraud need not be shown by direct and positive evidence. Circumstantial evidence is generally the only proof that can be adduced, and it is sufficient if facts and circumstances reasonably tending to the conclusion of fraud are proved. Rea v. Missouri, 17 Wall. 532, 21 L. ed. 707; Fernandez v. Olivencia, 19 P. R. R. 311; Smith v. Vodges, 92 U. S. 183, 23 L. ed. 481.

The allegations of the bill present circumstances which are suspicious and need explanation, but it is only fair to say that the evidence does not bear them all out. It is not clear, for instance, that Perez was largely indebted at the time of the mortgage to Ochoa, unless the debt to Ochoa himself be included. The fact that no interest was charged is well consistent with Perez's claim that the loan was a friendly act on the part of Ochoa, and the same is true of Ochoa's waiting a year after maturity before foreclosure. A simulated transaction would follow the usual forms more promptly. It is essential that there have been an actual loan from Ochoa to Perez, but the fact that it does not appear upon the books of Ochoa's company is not material. The defense is that it was a personal,

and not a firm, loan. The release of the first piece of property described in the mortgage was two years before the judgment of restitution which gave rise to this suit, and is claimed to be due to Ochoa's belief that he had ample security without it. In this it would seem that Ochoa was mistaken, however, for in 1906 he found it expedient to sell defendant Blanco the four remaining pieces of land for $10,000. This might have been because the property was in his name as trustee for Perez, as contended by the complainant, or it might have been because he wanted to close out a transaction which at this time threatened long litigation. It must be remembered also that there had been a hurricane in Porto Rico which destroyed much property and lowered values generally. Ochoa is shown to be a man of high character and large means, and the latter explanation is at least as probable as the former. The fact that Perez remained in possession of the mortgaged property counts for little. According to article 105 of the Mortgage Law, "a mortgage subjects the property on which it is imposed. . . . to the fulfilment of the obligation for the security of which it was constituted," and the commentator Galindo (vol. 3, p. 163) notes that the mortgagor is entitled to the occupancy. This is not true after the foreclosure, but in this instance that interval was brief and the amount of rent small. It cannot, therefore, be said that the clear preponderance of proof is in favor of the complainant as to fraud in the mortgage of Perez to Ochoa.

Some of the circumstances supposed to show fraud deserve special consideration as matters of law. One of these is that Ochoa did not appear before the notary at the time of the mortgage. This, however, does not seem to be required by the law, nor does it seem to be the custom. Another circumstance al-

leged is that the mortgage was hastily recorded. The Mortgage Law, article 146, requires, "in order that voluntary mortgages may be legally created in a valid manner, it is necessary (1) that they are agreed or constituted by a public instrument (2), that the instrument is recorded in the registry established by law." This is an invitation, if not a direction, to put the mortgage upon record at an early date. In point of fact, however, there seems to have been an interval of nearly two months between the date of the mortgage, November 10, 1899, and its record, January 5, 1900. It does not follow, therefore, from the facts and the law applicable, that the mortgage was a mere cloak.

It may be added that it may be questioned, whether, even if the Ochoa mortgage had been shown to be fraudulent, the proof of *lis pendens* of it would be sufficient to bind defendant Blanco under the allegations of this bill as construed on demurrer. This suit does not involve the question whether defendant Blanco was affected by notice, and so got a bad title, but whether she herself committed fraud by acquiring and holding the title for Perez. This is proved even less than that Ochoa committed such actual fraud. Good faith is presumed. Civil Code, § 437.

In this voluminous case other questions of law and evidence arise, but the principal questions having been disposed of, it is not necessary to take up those less important.

It follows, therefore, the complainant has not established to the satisfaction of the court that the conveyances complained of were simulated, and a decree will therefore be entered dismissing the bill.

It is so ordered.